# H. READ ET AL. v. ST. AMBROSE CHURCH.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS No. 3 OF PHILADELPHIA COUNTY.

Argued March 26, 1890—Decided January 5, 1891.
[To be reported.]

(*a*) The vestry of St. Ambrose church granted to a subsidiary church organization, called " The Guild of St. Ambrose Church," permission to build " an addition to the church, for their own and parish uses," with the proviso " that they incur no debts for which the vestry shall be held responsible."

(*b*) The purposes of the guild, as stated in its constitution, were " the advancement of the interests of St. Ambrose parish, and the promotion of good feeling and social intercourse among its members." The

Statement of Facts.

membership of the guild was not confined to members of St. Ambrose congregation, but its work was under the auspices of the church.

(c) Under the permission granted, the guild erected a hall attached to and communicating with the church building, with funds raised by fairs and excursions managed by the guild, contributions of its members and their friends, and contributions from members of the church, the Sunday school, and other church organizations:

1. By participating in the work of raising the fund to build the hall, the guild did not acquire any estate in or control of it; the hall was the property of the church corporation and subject to its control, and the resolution of the vestry consenting to the erection of the building, did not confer upon the guild an irrevocable license to use it.

2. Wherefore, the guild having, after the completion of the hall, assumed the powers of proprietorship, and having undertaken to rent it to outside parties without the vestry's consent, and to dictate the terms upon which it should be used for parish purposes, in defiance of the church authorities, the vestry were justified in excluding the guild from it.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 35 January Term 1890, Sup. Ct.; court below, No. 70 June Term 1888, C. P. No. 3.

On May 9, 1888, Harry Read and others, " known as the St. Ambrose Guild," brought assumpsit against the corporation of the Rector, Church Wardens and Vestrymen of the Church of St. Ambrose, to recover damages for an alleged breach of contract in excluding the plaintiffs from a certain building. Issue.

At the trial on January 11, 1889, the following facts were shown upon the part of the plaintiffs:

St. Ambrose Guild was an unincorporated association, the original name of which was the Guild of St. Ambrose Church. It was organized under the latter name in January, 1885. By its constitution its object was declared to be " the advancement of the interests of St. Ambrose parish, and the promotion of good feeling and social intercourse among its members." The original members numbered about fifteen, of whom about thirteen were members of St. Ambrose Protestant Episcopal Church. The constitution provided that " any young man over sixteen years of age, of known good moral character," should be eligible to membership, and many members afterwards joined the guild who were not connected with St. Ambrose Church, but be-

### Statement of Facts.

longed to denominations other than the Protestant Episcopal. In December, 1886, there were sixty-two members, of whom from twenty to thirty belonged to St. Ambrose Church.

The constitution contained the following provisions:

" The officers of the guild shall be a rector, whose office shall be permanent, a president, vice-president, secretary, and a treasurer, to be elected by ballot at the first stated meeting in January and the last stated meeting in June."

" The rector shall be ex-officio president of the guild, and may preside when called upon to do so by two thirds of the members present; shall give counsel as to the mode of conducting the different branches of its work, and shall perform such religious services as may be required."

" The active members shall have entire control of the funds, property, and government of the guild."

Soon after the organization was effected, the project of building a hall upon the church property, for the use of the guild, was suggested and submitted to representatives of the church. The officers of the Sunday school favored the idea and promised to contribute a part of the Easter collection for that purpose. In February, 1885, at the request of the guild, the vestry of the church took the following action : " Moved, That the request of the guild to build an addition to the church, for their own and parish uses, be granted, with the proviso that they incur no debts for which the vestry shall be held responsible."

The members of the guild then set to work to raise the necessary funds. By means of fairs, entertainments, excursions, contributions by the Sunday school, by members of the church, and by members of the guild and their friends, and a loan of $62.75 by members of the church choir, they succeeded in raising the money required for the erection of a frame building costing $725, of which sum $675 was paid to the contractor, and $50 was paid to the city for the necessary building license. The contractor was paid partly in cash and partly in notes. The last note was paid off sometime in December 1886. The fairs were participated in by the members of the church, and the children in the Sunday school were utilized in the sale of tickets for them. The hall erected by the guild was placed against the church building, using one of the walls of the lat-

Statement of Facts.

ter, but so arranged that, if the church should be torn down, the hall would not have to be taken down with it, but could be completed as a separate building. The guild hall had three doors, one of which opened into the church yard, and the other two led into the church building. Gymnastic apparatus, chairs, settees and other furniture, were placed in the hall by the guild.

In December, 1885, the guild submitted to the vestry a proposed written agreement between the two bodies, establishing rules for the government of the guild hall, specifying that the hall should be open to the church on certain evenings, and that, whenever the church desired to use it on other occasions, consent should be obtained at a regular meeting of the guild, and stipulating that the guild should retain possession of the building so long as it should conform to the rules and regulations specified. The vestry declined to enter into such an agreement.

In October or November, 1886, the members of the guild changed its name from the Guild of St. Ambrose Church to the St. Ambrose Guild. In the latter month a communication was sent to the guild by order of the vestry, which was as follows: "Gentlemen: At a regular meeting of the vestry of St. Ambrose Church, held this evening, I was requested to correspond with you, to inquire upon what authority you have rented the guild hall to an outside party, without first consulting and getting the approval of the vestry." To this communication, the guild replied by referring the vestry to the provision in the constitution of the guild, that its funds, property and government should be in the control of its active members.

On December 27, 1886, the vestry adopted the following resolutions:

"Resolved, That after due consideration regarding the relation which the present guild holds towards St. Ambrose Church, we, the vestry, unanimously are of the opinion that they are not acting in the proper spirit as a body who are supposed to be co-operative and harmonious as an adjunct to this parish, and consequently we are,

"Resolved, That they shall not be recognized, as now organized, as having any connection or bearing any relation whatever towards the P. E. Church of St. Ambrose; and, further,

"Resolved, That we forbid any meeting to be held in the guild hall adjoining the church, from this date, without the full consent of the wardens and vestry of this church; and all property claimed as not belonging to this church shall be immediately removed and the key surrendered; also

"Resolved, That a guild having an article in its constitution clearly defining its relation to the vestry be formed by the rector of the parish."

Notice of the third resolution was communicated to the guild. On or about January 1, 1887, the guild sent a committee to interview the vestry at a meeting held by the latter, but the vestry declined to receive the committee as members of the guild, and, on the evening of January 3, 1887, the members, on assembling to hold a meeting, found the door of the hall locked against them and were unable to obtain admittance. The vestry had caused the furniture and other property to be removed from the hall and stored in the neighborhood.

Litigation between the guild and the church was then commenced, and upon a bill in equity filed in the Court of Common Pleas No. 1 of Philadelphia county, to enjoin the church from interfering with the use of the hall by the guild, an injunction was refused. An action, similar to the present one, was then brought in the Court of Common Pleas No. 4 of said county, upon the trial of which judgment of compulsory nonsuit was entered: Read v. St. Ambrose Church, 6 Pa. C. C. R. 76. The present action was brought subsequently.

At the close of the testimony for the plaintiffs, the court, REED, J., on motion entered judgment of nonsuit. A motion to take off the nonsuit having subsequently been refused by the court in banc, the plaintiffs took this appeal, assigning the entry of the judgment of nonsuit for error.

*Mr. William W. Wiltbank* (with him *Mr. D. M. M. Collins*), for the appellants:

1. The proofs have made it clear that the guild was an unincorporated association of men, co-operating to a considerable extent with the corporation of St. Ambrose Church, but in no way a part of the latter. It was entirely competent to contract with the church. It is clear also that there was a contract between the two, to the effect that if the guild erected a

Arguments.

building, at its own expense in every particular, saving the church property from liability, it should have the use of that building in common with the church corporation.  The action of the guild was not in any sense exclusively for the benefit of the church corporation.  Indisputably the two were distinct organizations.  Can it be argued that, if the few members of the guild, who were attendants at the services of St. Ambrose Church, had resigned their membership, the church could at once take exclusive possession of the hall, against the body that erected it?  The act of the defendant corporation was an act of bad faith.

2.  The right granted to the guild was in the nature of a license to enjoy real estate and the improvements thereon.  It was indefinite as to the duration of its exercise, and, being acquired by the expenditure of money in putting a permanent improvement on the land, it was irrevocable: Rerick v. Kern, 14 S. & R. 267; Thompson v. McElarney, 82 Pa. 174; McKellip v. McIlhenny, 4 W. 317; Swartz v. Swartz, 4 Pa. 353; Lacy v. Arnett, 33 Pa. 169.  However, even if it be regarded as a revocable license, its revocation involves a liability to the plaintiffs for damages: Rerick v. Kern, 14 S. & R. 267; Wood v. Leadbitter, 13 M. & W. 855.  It cannot be revoked without paying the expenses incurred by the plaintiffs in consequence of the license: 2 Esp. N. P., Gould's ed., 268 (636); Pollock on Torts, *306, *307.

*Mr. Lawrence Lewis, Jr.* (with him *Mr. Frank P. Prichard*), for the appellee:

1.  It is evident, from its organization and character, that the guild was an integral part of the church.  It does not appear that the guild was dealt with in any independent capacity.  The vestry have constantly asserted their exclusive right to the management and control of the "addition to the church" erected by the guild, and they repudiated the idea of entering into any agreement relative to its use, as soon as such an agreement was presented to them.  There is no proof of any binding contract between the church and the guild.  The resolution of the vestry relied on was at best a mere revocable license, and was intended to be no more.

2.  No other conclusion is reasonable than that permission

was given only to erect a building to be occupied from time to time as the vestry should desire and direct. A church must necessarily manage, own and control all the property that appertains to it. To permit a subsidiary church organization, such as a missionary society, a Sunday-school, or a church guild, to acquire distinct proprietary rights therein, would manifestly be subversive of all order and discipline, and opposed to the plainest dictates of common sense.

OPINION, MR. JUSTICE McCOLLUM:

The appellants are members of an unincorporated association, which was organized in January 1885 under the name of " The Guild of the Church of St. Ambrose," for the purpose of promoting, inter alia, the interests of St. Ambrose parish. The rector of the parish was, ex officio, the president of the association, and its work was under the auspices and in aid of the church. It solicited and obtained permission from the vestry to build an addition to the church edifice for its own and parish uses. The fund for the erection of this addition was created by fairs and excursions projected and managed by the guild, and by contributions from the Sunday school, the choir, the members of the church and guild, and their friends. The members of the church and its auxiliary societies were participants in and patrons of all the entertainments for the benefit of the fund, and the success of the enterprise was mainly due to their exertions in its behalf.

After the addition was completed, the appellants assumed the privileges and powers of proprietors, rented it to outside parties without the consent of the vestry, and attempted to dictate the terms on which it should be used for parish purposes. When their right to rent the building without the sanction of the church authorities was questioned, they were defiant, and declared that they were the owners of it. In answer to this claim, it was resolved that no meeting should be held in the guild hall without the consent of the wardens and vestry of the church, and that any property in it which did not belong to the church should be removed. As this action of the church authorities did not change the attitude of the appellants, they were denied the use of the hall, and because of their exclusion from it brought this suit. It will be seen from this

Opinion of the Court.

recital of the material facts in the case that the dispute between the contending parties relates to the use and control of the addition to the church building, and involves a consideration of their respective rights in it.

The guild was not organized to quarrel with the church authorities, or to usurp their functions; it was designed to promote the interests of the church. Its spiritual guide was the rector of the parish, who was required by its constitution to give counsel as to its work and to afford religious instruction. It was a church society, and thirteen of its fifteen original members belonged to the church. In all that pertained to the work and government of the church and the control of the church property, it was a subordinate and not a dictator. It could not, while animated by the spirit in which it was formed and in the proper prosecution of its avowed objects, antagonize the church authorities in these matters. Its mission was to assist and strengthen, not to obstruct, weaken, or destroy. In considering its present claim, regard must be had to the purpose of its creation, and its relations to the religious body with which it was intended to co-operate.

The guild room or hall was the property of the church; it was erected on church ground, an addition to and part of the church building. The appellants did not acquire any estate in or control of it, by their participation in the work of raising the fund to build it. In this respect, they were on the same footing as other contributors of services or money. There was no contract between them and the defendant corporation concerning the occupancy of the building, and there is no evidence in the case which justifies their claim of an irrevocable license to use it. A contract or license which enabled them to control it cannot be implied from the consent of the vestry to its erection. That consent was sought and given in aid of the church; it did not create or authorize an encumbrance on the church property. Any occupancy or use of the building by the appellants or for their benefit was permissive and during the pleasure of the church, and any defiance by them of its authority in the premises was just cause for excluding them from it. The decisions on which they rely to support their ungracious contention are not applicable to the case they have presented.

The judgment is affirmed.